CAROLINA, CUMBERLAND GAP & CHICAGO RAILWAY COM-
PANY v. TRIBBLE.

1. A tax voted by the people of a township to aid in the construction of
   a railroad, is not a State, county, or municipal tax; and therefore a
   manufacturing company paying such tax is not entitled to have it
   refunded under the act of 1873, directing manufacturing companies to
   be repaid the amount of their State, county, and municipal taxes.
2. If the manufacturing company were entitled to such repayment, it
   could not be made out of the money raised to pay the railroad sub-
   scription, for by the terms of the act authorizing this subscription, the
   moneys so raised were to be paid over to the railroad company.
3. And the county treasurer was not protected in such repayment by an
   order of the comptroller general fixing and determining the amount
   to be repaid to the manufacturing company on account of this town-
   ship tax, and directing the county treasurer to refund that amount.

Before PRESSLEY, J., Anderson, April, 1885.

The opinion sufficiently states the case. The Circuit judg-
ment was as follows :

Under act of 1882 Williamston township voted a subscription
of $6,000 to the stock of said company. It was levied by tax,
in two instalments, on the property in said township, including
that of the Pelzer Manufacturing Company. It claimed a return
of a portion of its tax, under the manufacturers' act of 1873, and
on its petition to the comptroller general, to whom by said act
jurisdiction was given to "fix and determine" said matter, he
fixed that $1,105 46-100 of said tax should be returned to said
company, and by his order said amount was so paid by defendant.
Plaintiff now sues him on his bond as treasurer of Anderson
County, claiming that said amount was duly levied and collected
for plaintiff's use under act of 1882, which plainly requires said
treasurer to pay the sum so collected to the plaintiff or his treas-
urer. As defendant was not liable to pay said amount more than
once, plaintiff contends that the payment to the Pelzer Company
was unlawful.

One ground is, that it was a mere assessment for local pur-
poses, and therefore was not a "county or municipal" tax con-

templated by the act of 1873. That position seems to me untenable. The act under which it was levied calls it a tax ; the proceeds are not required to be used for any improvements within the township, made a corporation by said act; the levy was by the county commissioners, and the collection was by the county treasurer, "in the same manner as the other State and county taxes." It was, therefore, either a *county* tax, or a municipal tax by the township in its special corporate capacity.

Plaintiff further urges that, as the act which authorizes this tax directs the proceeds to be paid to plaintiff, that is, *pro tanto*, a repeal of so much of the act of 1873 as required that it be refunded to the Pelzer Company. This position is untenable, because the act of 1873 is a contract, and the legislature cannot repeal it so as to affect rights already vested at the time of the repeal. I must, therefore, construe both acts together, so as to give full effect to all provisions of each act, and under that rule it seems plain to me that the act of 1882 required the commissioners to levy an amount sufficient to pay said subscription, and also to return to the Pelzer Company the amount it was entitled to under the act of 1873.

Plaintiff further urges that the Pelzer Company was not entitled to said return of any portion of its taxes, because it fails to distinguish in its tax returns between that portion of its property so exempt from taxation and that portion which was not exempt. This ground is untenable, because the comptroller general, whose duty it was to "fix" and "determine" that matter, has done so upon a showing satisfactory to himself.

Further, it is contended that under art. 9, sec. 4, of our Constitution, this money could not be lawfully paid to the Pelzer Company without special appropriation to that purpose by act of the legislature. My judgment on this point is, that the act of 1873 as clearly appropriates this money to the Pelzer Company as can be claimed for the plaintiff under the act of 1882. In each case the appropriation is under the general act, and if the one be good, the other cannot be bad. Plaintiff, therefore, could not recover in this case, if his constitutional objection be tenable. There is no appropriation in its favor which differs in any respect from that to the Pelzer Company.

Finally, it is objected that the act of 1873 is unconstitutional and void. I would not so decide were that question rightly before me in this case. It has been decided that a county or township tax to pay subscriptions to the stock of a railroad company is constitutional, and if public money raised by taxation can rightly be appropriated for that purpose, I cannot perceive why it should not follow that it may also be appropriated to draining low-lands, digging the Columbia canal, encouraging manufacturers, or to any other internal improvements which the legislature may deem wise and proper. But this question is not involved in this case. This is a suit on defendant's bond to the State, and he is not in default when he obeys—as he did in this case—the plain letter of the law. If a mere ministerial officer in such case were to assume to judge of the constitutionality of the law under which he acts, we would soon have anarchy in all the State offices.

The complaint is therefore dismissed.

*Messrs. Child & Boggs* and *G. E. Prince*, for appellants.

*Messrs. Wells & Orr*, contra.

July 14, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Under an act of the general assembly of this State, passed in 1882, Williamston township, in Anderson County, voted a subscription of $6,000 to the capital stock of the Carolina, Cumberland Gap & Chicago Railway Company, the plaintiff. This subscription was to be paid in two equal annual instalments. The first instalment seems to have been collected and paid in full to the plaintiff. When the second instalment was collected, and before paid over to the plaintiff, the Pelzer Manufacturing Company, a company located and doing business within the Williamston township, claimed the benefit of the act of 1873, to encourage and aid manufacturers, re-enacted as subdivision 23, of section 169, General Statutes. The comptroller general referred the question to the attorney general, who advised that the Pelzer Company was entitled to the benefit of the act of 1873. He then instructed the treasurer that the tax should be paid, with a petition from the company to have it

refunded. This course appears to have been followed and the county treasurer paid the amount, fixed and determined by the comptroller as proper, to wit, $1,105.46, back to the company.

Shortly thereafter, the railway company commenced the action below against M. P. Tribble, county treasurer, and the other defendants, his bondsmen, for the recovery of this sum with interest. The case was heard by his honor, Judge Pressley, without a jury, who dismissed the complaint. The appeal of the plaintiff is founded upon numerous exceptions. From the view which we have taken of the case, however, it will not be necessary to consider these exceptions *seriutim*. In our opinion, the main questions in the case, those upon which it must turn, are : 1st. Does the act of 1873 apply to a tax like the one raised upon the township voting this subscription ? 2nd. If so, was the county treasurer authorized to refund the amount paid in by the Pelzer Company, back to said company, out of the subscription money voted by the township, and collected by him, thereby diminishing the subscription to that extent? If either of these propositions is negatived, then it was error in the Circuit Judge to dismiss the complaint, and a new trial must follow.

The act of 1873, upon this subject, provides, that any person engaged in manufacturing shall, for a period of ten years from the date of his investment, be entitled to receive from the treasury of the State a sum equal to the aggregate amount of State, and, from the county treasurer the aggregate amount of county, taxes and from all municipal corporations, a sum equal to the aggregate amount of municipal taxes, which shall be levied and collected upon the property or capital employed, or invested directly in such manufacturies or enterprises, not including herein the tax levied upon the land upon which the factories may be erected. *Gen. Stat.*, § 169. And in the charter of the Pelzer Company, it is provided, that said company is entitled "to the benefits enumerated and contained in the act entitled, 'an act to aid and encourage manufacture,' approved December 20, 1873, for a term of ten years from the date of its organization."

It is clear that the act of 1873, and the provision in the Pelzer Company's charter, *supra*, entitles that company to receive from the treasury of the State, or from the county treasurer, or

from municipal treasurers, as the case may be, an amount equal to any tax which may be levied and collected upon its property for State, county, or municipal purposes. This the act in express terms provides for, and so plainly that there is no room for question or doubt. And if it be that the tax collected by the defendant, county treasurer, is either a State, county, or municipal tax, then the first question is solved. But is it either in the sense of those terms as used in the act of 1873? There is no doubt on the question of its being a tax. *Chamblee* v. *Tribble, Treasurer,* 23 *S. C.,* 70. It is equally certain that it is not a State or municipal tax. Is it a county tax in the sense of the act? The term county has a well defined meaning. By act the State has been divided into a certain number of territorial boundaries called counties. Each county is a body politic and corporate for certain purposes, among which are to purchase and hold for the use of the county lands and personalty within the limits thereof, to make all contracts, and to do all acts in relation to the property and concerns of the county necessary thereto. County commissioners are provided for, who are the officials of the county, and represent it. These officials regulate the county finances, and ascertain and report the amount of county taxes necessary to be raised for county purposes, upon which report the collection is authorized by act of the legislature.

Now, Williamston township, which voted the subscription upon which the tax herein was collected, is located in Anderson County, but does that fact make the tax in any sense a county tax? This tax was laid on Williamston township, not upon the report of the county commissioners, not by act of the general assembly, not for county purposes, but by a vote of the people of that township under the authority of an act of 1882, passed, we must suppose, at the instance of said people, and for the purpose of enabling them to assist a private enterprise, true a great enterprise, and one which, if it could be completed, would, no doubt, be of great public benefit, but still an enterprise in which neither the State nor the county had any official connection, or interest, and therefore a private enterprise. Now, how can a tax thus assumed by this township upon the voluntary vote of the taxpayers themselves under an act passed at their instance

and assumed for the purpose of assisting the plaintiff in an enterprise which it was supposed, no doubt, would be of a great benefit to said township, be regarded as a county tax in the sense of those terms as used in the act of 1873 ? The act of 1873 was intended to exempt manufacturies from the ordinary State, county, and municipal taxes. The terms employed do not carry the act beyond such taxes, and we have no authority or power to extend these terms beyond their ordinary and common meaning. When the act of 1882 was enacted authorizing the township in question to vote a subscription to this road, then was the time to have provided for refunding so much of the tax voted as might fall on this manufacturing company, if it was to be exempt. This, however, was not done, and we do not think that now the act of 1873 can be invoked to that end. Such a tax, we are satisfied, was not in the contemplation of the legislature at the time the act of 1873 was passed. It is not within the meaning of the terms of the act, and it would be *ultra vires* for this court to interpolate the act and embrace this tax.

But if we are mistaken in the conclusion above, yet we think that the appeal must be sustained upon the second question. Was the county treasurer authorized to draw from the sum collected on the township subscription the amount of the Pelzer Company's tax for the purpose of refunding the same to said company, even supposing that said company was entitled to a rebate under the act of 1873 ? Was this rebate a charge upon the subscription, and to that extent diminishing it ? The act of 1882 provides in its 6th section that the townships of Belton and Williamston, in Anderson County, may, by vote of a majority of the voters therein, authorize the county commissioners to subscribe such sum, not to exceed $6,000, to the capital stock of plaintiff company. And after such vote, if in favor of the subscription, the said county commissioners were required to make the subscription in behalf of the township so voting. § 9. And in section 11 it is provided that all moneys collected on account of any subscription made under this act shall, as soon after collected as practicable, be turned over by the county treasurer aforesaid to the treasurer of said company, or their legally authorized agent.

Now, it appears that a vote was had in Williamston township under this act, the result of which authorized the county commissioners to subscribe on behalf of this township the sum of $6,000. This subscription was made, and no doubt stock to that extent issued "in behalf of the township." The tax for the amount of the subscription was levied and collected as provided in the act. When thus collected, we cannot see why it did not become immediately subject to the operation of the 11th section, *supra*, which imperatively declares that all moneys collected on account of any subscription made under the act shall, as soon as practicable, be turned over by the county treasurer to the treasurer of said company. Any other construction would defeat, or might defeat, and entirely abrogate the act. Suppose the tax of the Pelzer Company had been much greater than it was, amounting to one-half, two-thirds, or, to take an extreme case, the whole of the subscription, how could the subscription ever have been met, if the treasurer was bound, as soon as it was collected, to return it to the taxpayer, as contended for by the respondent. A construction which works such a result cannot be the correct one.

We think the vote of the township authorizing the subscription of $6,000 to the capital stock of the plaintiff company was in the nature of a contract on the part of the township, and that sum must be paid to said company, and the money raised under the act to meet this subscription by virtue of section 11 of the act virtually belonged to the plaintiff, and should have been turned over to the treasurer of the company "as soon as practicable" after collection. This conclusion does not necessarily repeal the act of 1873, admitting that it covers a tax of the kind under consideration. Because, if under the act of 1873 the Pelzer Company is entitled to the rebate, even against a subscription as here, there is nothing in that act which requires that this rebate shall be had out of the subscription money, thereby diminishing the subscription, while in the act of 1882 there is an imperative injunction that all moneys collected under the subscription shall be at once turned over to the treasurer of the railroad company.

Can the action of the comptroller in this matter shield the

treasurer? Under the act of 1873 the comptroller is authorized and empowered to "fix and determine" the sum of money to be repaid to manufacturers, the State tax to be paid by the State treasurer on his warrant, and the county tax by the county treasurer on his order; but he is nowhere empowered to direct the particular fund out of which this repayment shall be made, nor do we understand that the comptroller gave any order to that effect. He fixed and determined the amount, which he had the right to do, and, supposing that the act of 1873 applied, he gave the order that the amount thus fixed and determined should be refunded. This he had also the right to do under the supposition that the act of 1873 was applicable, but he had no authority (nor do we see that he has attempted to do so) to direct that this repayment should be made out of a fund collected and, in substance, already appropriated to a different and a special purpose, and over which other parties had a special claim.

Having reached the conclusion above upon the two questions suggested in the beginning, it is unnecessary to discuss the other questions raised in the exceptions.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.